# NOTE

Loan Number: 100339

$ 196,000.00

ERIE COUNTY, NEW YORK

**PROPERTY ADDRESS:** 118 FARGO AVE., BUFFALO, NEW YORK 14201

## DEFINITIONS

In addition to the capitalized terms defined where used, words used in multiple sections of this Note and/or the corresponding Loan Documents are defined below.

(A)  **"Borrower"** is WNY PRO HOME IMPROVEMENTS, LLC, A NEW YORK LIMITED LIABILITY COMPANY

Borrower is the Trustor under the Mortgage(s).

(B  **"Lender"** is PARK PLACE FINANCE, LLC, A TEXAS LIMITED LIABILITY COMPANY
Lender's address is 7000 N MOPAC SUITE 200-41, AUSTIN, TEXAS 78731

Lender is the Beneficiary under the Mortgage(s).

(C)  **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Mortgage(s).

(D)  **"Loan Documents"** means collectively the Loan Agreement, Note, Mortgage(s) and all other documents executed and/or delivered in connection with the Loan.

(E)  **"Note"** means this promissory note signed by Borrower and dated    DECEMBER 18, 2020    This Note states that Borrower owes Lender ONE HUNDRED NINETY-SIX THOUSAND AND 00/100
Dollars (U.S. $ 196,000.00                                                                      )
plus interest. Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than         JANUARY 1, 2022         (the **"Maturity Date"**).

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $196,000.00           (this amount is called "Principal"), plus interest, to the order of the lender ("Lender"). The Lender is PARK PLACE FINANCE, LLC                                                                          , its successors and assigns, located at 7000 N MOPAC SUITE 200-41, AUSTIN, TEXAS 78731

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          9.990 %, computed on the basis of a three hundred sixty (360) day year consisting of twelve (12) thirty (30) day months. Interest commences on the day the lender's funds are placed in escrow. I will pay interest on the full amount of the unpaid principal of this Note even though the Lender may hold some of my cash or other property as collateral for repayment and even if I have prepaid payments in accordance with paragraph 3(A).

The interest rate required by this Section 2 is the rate I will pay before any. If I default, the above rate shall, at the option of Lender without notice, increase by five percentage points and remain at that rate until all defaults are fully cured.

## 3.   PAYMENTS

### (A)   Time and Place of Payments

I will pay all interest on this Note from the date of funding through the end of that month at loan closing. Thereafter I will make monthly payments on the first day of each month during the term of this Note starting with the "First Payment Date" of          FEBRUARY 1, 2021          . If, on          JANUARY 1, 2022          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments payable to  PARK PLACE FINANCE, LLC                                        at

7000 N MOPAC SUITE 200-41, AUSTIN, TEXAS 78731

or at a different place if required by the Note Holder. I agree to accept payment billings by email.

If I have prepaid payments when the loan was funded, Lender may retain those payments as earned in full and it will note in its records that the period covered by the prepaid payments has been paid as agreed. Prepaid payments shall not be applied to principal. If I repay the loan within this period, any unused prepaid funds will be credited on the payoff.

### (B)   Amount of Monthly Payments

My monthly interest payment will be in the amount of U.S. $1,631.70

### (C)   Application of Payments

My payments under this Note will be applied first to any interest then due, next to late or other charges due and finally to unpaid principal. A payment will be deemed made when received at the payment address in subparagraph (A) above or at such other payment address as the Note Holder may designate from time to time.

## 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due subject to the Prepayment Premium (as hereinafter defined), if applicable. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note. I may only make one prepayment of principal per month.

On the date on which a prepayment, voluntary or mandatory, is made (including any amounts collected by Note Holder after a default), I shall pay to Note Holder (A) all accrued and unpaid interest on the amount of principal being prepaid through and including the date of such prepayment and (B) if Prepayment is made during the first one (1) month of the First Payment Date, a prepayment premium up to $0.00 reduced by any monthly interest payment previously received (the "Prepayment Premium"). Notwithstanding the foregoing, no Prepayment Premium shall be payable on a prepayment that is required to be made as a result of a casualty to or the taking by eminent domain of the subject property. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. Prepayments shall be credited to interest and principal as of the last day of the month in which the same were received, unless payment in full in made.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ten (10) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ten percent (10%) of my overdue payment of principal and interest or one-hundred dollars ($100), whichever is more and I agree that such charge is a reasonable estimate of the fair compensation for the loss and damages that Note Holder will suffer for such late payment. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due or the amount due on the Maturity Date, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least ten (10) days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees, inspection fees, appraisal fees, returned check fees and other out of pocket costs.

## 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at 158 PROSPECT AVE., BUFFALO, NEW YORK 14201
or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment, Notice of Dishonor and Protest. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid. "Protest" means the right to obtain an official certification of nonpayment.

I AGREE THAT LENDER'S WILLINGNESS TO OFFER TO ME THE INTEREST RATE DESCRIBED ABOVE IS SUFFICIENT AND INDEPENDENT CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY LENDER, FOR THIS WAIVER. I FURTHER UNDERSTAND THAT LENDER WOULD NOT OFFER SUCH AN INTEREST RATE TO ME ABSENT THIS WAIVER.

I acknowledge that prepayment of this Note may result in Note Holder's incurring additional losses, costs, expenses, and liabilities, including, but not limited to, lost revenue and lost profits. I, therefore, agree to pay the Prepayment Premium as described above, if any Principal amount is prepaid, whether voluntarily, or by reason of an acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the property securing the loan giving the Note Holder the right to accelerate the maturity of this Note as provided in the Security Instrument (defined below)).

| _____ | _____ | _____ | _____ | _____ | _____ |
| initials | initials | initials | initials | initials | initials |

## 10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, this Note is secured by a Mortgage against real property (the "Security Instrument"), dated the same date as this Note. The Security Instrument protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note, and in the event of default by me under this Note, the Security Instrument or other loan documents, Note Holder may have the right to exercise certain remedies including, without limitation, foreclosure or my interest in such real property, pursuant to the terms of such Security Instrument. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the subject property or any interest in it is sold or transferred (or if a beneficial interest in Trustor is sold or transferred and Trustor is not a natural person), or a lien or encumbrance is created upon such property, voluntarily or involuntarily, or if Trustor shall file or have filed against it/or the property any proceeding for relief of debtors under the United States Bankruptcy Code, in each case without Beneficiary's prior written consent, Beneficiary may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Beneficiary if exercise is prohibited by federal law as of the date of this Mortgage. If Beneficiary exercises this option, Beneficiary shall give Trustor notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which borrower must pay all sums secured by this Mortgage. If Trustor fails to pay these sums prior to the expiration of this period, Beneficiary may invoke any remedies permitted by this Mortgage without further notice or demand on Trustor.

If Note Holder exercises this option, Note Holder shall give Borrower notice of acceleration. The notice shall provide a period of not less than ten (10) days from the date the notice is given in accordance with Section 12 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. INDEMNIFIED TAXES

Any payments by me or on account of any of my obligations under any Loan Document shall be made without deduction or withholding for any tax; provided, however, that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with applicable law and the sum payable shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable hereunder) Note Holder receives an amount equal to the sum it would have received had no such deduction or withholding been made; provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on Note Holder. I shall promptly indemnify Note Holder for all such non-excluded taxes (including interest and additions to tax) and related expenses. I shall promptly deliver evidence satisfactory to Note Holder of any payments made pursuant to this Section 11. I shall also pay all documentary, recording, filing or similar taxes that arise with respect to this Loan Document.

## 12. USE OF NOTE PROCEEDS

I, the Borrower, represent to the Lender that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224.

## 13. LOAN AGREEMENT

The loan evidenced by this Note is subject to a Loan Agreement dated         DECEMBER 18, 2020 ("Loan Agreement"), the terms of which are incorporated herein by this reference.

## 14. CHOICE OF LAW

NEW YORK                              law shall exclusively govern the interpretation and enforcement of this Note.

NOTICE TO BORROWER: DO NOT SIGN IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

THIS NOTE PROVIDES FOR A BALLOON PAYMENT WHICH WILL BE DUE ON THE DATE SPECIFIED IN PARAGRAPH 3 ABOVE, WHETHER OR NOT YOU HAVE OBTAINED A LOAN TO REPAY THIS LOAN. YOU MAY NOT RELY UPON ANY VERBAL ASSURANCES OR AGREEMENTS BY ANY PERSONNEL OF NOTE HOLDER OR ANY MORTGAGE BROKER THAT THEY HAVE OR WILL OBTAIN OR ARRANGE A REPLACEMENT LOAN FOR YOU. OBTAINING A REPLACEMENT LOAN IS YOUR RESPONSIBILITY.

## 15. STATE SPECIFIC PROVISIONS

Not Applicable.

## 16. TIME

Time is of the essence in this Note.

## 17. NO UNWRITTEN ORAL AGREEMENTS

THIS NOTE, THE LOAN AGREEMENT, AND THE SECURITY INSTRUMENT/MORTGAGE, AS AMENDED, REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENT OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

WNY PRO HOME IMPROVEMENTS,
LLC, A NEW YORK LIMITED
LIABILITY COMPANY

By: _____ (Seal)
MICHAEL THOMPSETT,                -Borrower
MANAGER

*[Sign Original Only]*

Date: DECEMBER 18, 2020

Property Address: 118 FARGO AVE.

BUFFALO, NEW YORK 14201

Borrower's Notice Address: 158 PROSPECT AVE.

BUFFALO, NEW YORK 14201

Loan Number: 100339

# ALLONGE

This Allonge is affixed to, and is hereby made a part of, that certain Note, dated  DECEMBER 18, 2020
in the original principal amount of $ 196,000.00          ("Note"), made by  WNY PRO HOME
IMPROVEMENTS, LLC, A NEW YORK LIMITED LIABILITY COMPANY, 158 PROSPECT AVE.,
BUFFALO, NEW YORK 14201

for the benefit of  PARK PLACE FINANCE, LLC, A TEXAS LIMITED LIABILITY COMPANY

("Assignor").

Pay to the order of

Dated: DECEMBER 18, 2020

ASSIGNOR: PARK PLACE FINANCE, LLC, A          By: _____
          TEXAS LIMITED LIABILITY
          COMPANY

DocMagic eForms